**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In Re:

LORENZO GUTIERREZ TORREZ                    Case No. 6:16-bk-02879-RAC
STEVI JEAN TORREZ

                                            Chapter 7

          Debtors

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY (SURRENDERED PROPERTY)

**NOTICE OF OPPORTUNITY TO**
**OBJECT AND REQUEST FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files an objection within twenty-one (21) days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at George C. Young Federal Courthouse, 400 W. Washington Street, Suite 5100, Orlando, Florida 32801, and serve a copy on the movant's attorney, Heather J. Koch, Esq., Florida Bar No. 89107 of Phelan Hallinan Diamond & Jones, PLLC, 2727 West Cypress Creek Road, Ft. Lauderdale, FL 33309 and any other appropriate persons within the time allowed.**

**If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

By and through its undersigned counsel, Phelan Hallinan Diamond & Jones, PLLC, PHH

Mortgage Corporation ("Movant"), its successors and/or assigns, a secured creditor of the above-

referenced Debtors, hereby moves the Court for an Order granting relief from stay pursuant to 11

U.S.C. §362(d) and states:

   1.  This Court has jurisdiction over these matters pursuant to 28 U.S.C. §1334 and 28 U.S.C.

§157(b)(2)(G).

2.   On April 29, 2016, the Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code.

3.   According to Schedule C, the Debtors have not claimed the Property as exempt.

4.   The real property located at 10403 LAKE HILL DRIVE, CLERMONT, FL 34711 (hereinafter, the "Property") is legally described as follows:

**LOT 17, CRESCENT WEST, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 29 PAGES 67, 68 & 69, INCLUSIVE, PUBLIC RECORDS OF LAKE COUNTY, FLORIDA**

5.   Movant is the holder of the Note Secured by the Mortgage encumbering the property claimed by the Debtors to be part of the bankruptcy estate and is a party in interest in this bankruptcy proceeding.

6.   On June 15, 2011, the Debtors executed a Promissory Note in the principal amount of $155,944.00 (herein, the "Note"). A copy of the Note is attached as Exhibit "A" and incorporated by reference.

7.   The Note was secured by a mortgage which was recorded as Book 4044, Page 2031-2042, Instrument No. 2011058217 on June 22, 2011. A copy of the Mortgage is attached as Exhibit "B" and incorporated by reference.

8.   Debtors have defaulted under the terms of the Note and Mortgage by failing to timely tender the payments due.  The Debtor's loan is currently contractually due for June 1, 2015.

9.   The post-petition payment address of the Movant is: PHH Mortgage Corporation, 1 Mortgage Way, Mailstop:  SBRP, MT. Laurel, NJ 08054.

10. There is now due and owing from the Debtors to Movant pursuant to the terms of Exhibits "A" and "B" the principal amount of $143,377.54, together with interest from May 1,

2015, additional advances made to protect the security granted, other expenses, costs of this action and attorney's fees.

11. Movant has not been offered and does not have adequate protection of its interest in the Property.  Moreover, Movant cannot be certain that the real property is insured or will remain insured or that the property is being maintained.

12. Debtors have alleged a current value of the subject property as $151,831.00 under Schedule A to Debtors' petition.

13. Filing of the Petition under the Bankruptcy Code has stayed Movant from proceeding with its state court rights.

14. Movant is entitled to relief from the automatic stay because the Debtors have no equity in the Property and the interest of the Debtors and/or Trustee herein is inferior and subordinate to the interest of the Movant.

15. The Debtor's Statement of Intention calls for the surrender of the Property.

16. Movant requests a waiver of the fourteen (14) day stay under Rule 4001(a)(3) of the Order granting relief so that Movant may pursue *in rem* remedies without further delay.

17. Movant seeks the award of fees and costs of $926.00 for the prosecution of this motion as provided for and allowed under the terms of the Mortgage.

18. Movant is entitled to adequate protection of its interests in the subject real property and requests the Court to require the Debtors to make adequate protection payments; and if no such adequate protection can be provided, Movant prays for entry of an Order granting relief from the stay of 11 U.S.C. §362 to permit Movant to proceed with its state court rights.

19. Movant requests permission to communicate with the Debtors and Debtors' counsel to the extent necessary to comply with applicable non-bankruptcy law.

WHEREFORE, Movant requests that this Court modify the stay under 11 U.S.C. §362(d) and permit it to proceed with its State Court rights under the terms of the Mortgage and Note, requests that the fourteen-day extension of the stay under Rule 4001(a)(3) be waived, award bankruptcy fees and costs in the amount of $926.00, permit it to communicate with the Debtors and counsel in order to comply with applicable non-bankruptcy law, and requests such additional relief as is just.

/s/ Heather J. Koch, Esquire
Heather J. Koch, Esq., Florida Bar No. 89107
Phelan Hallinan Diamond & Jones, PLLC
2727 West Cypress Creek Road
Ft. Lauderdale, FL 33309
Tel: 954-462-7000 Ext. 53332
Fax: 954-462-7001
FLMD.bankruptcy@phelanhallinan.com

## PROOF OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing, and any

applicable exhibits attached thereto, has been served electronically, or routed for service by U.S.

Mail, to the following:

LORENZO GUTIERREZ TORREZ
10403 LAKE HILL DR.
CLERMONT, FL 34711

STEVI JEAN TORREZ
10403 LAKE HILL DR.
CLERMONT, FL 34711

KATIE M MILLER
THE LAW OFFICES OF KATIE M. MILLER, P.A.
15701 HIGHWAY 50, SUITE 204
CLERMONT, FL 34711

DENNIS D KENNEDY, (TRUSTEE)
P.O. BOX 541848
MERRITT ISLAND, FL 32954

UNITED STATES TRUSTEE (SERVED ELECTRONICALLY)
OFFICE OF THE UNITED STATES TRUSTEE
GEORGE C YOUNG FEDERAL BUILDING
400 WEST WASHINGTON STREET, SUITE 1100
ORLANDO, FLORIDA 32801

Date:   July 13, 2016                          /s/ Heather J. Koch, Esquire
                                                Heather J. Koch, Esq., Florida Bar No. 89107
                                                Phelan Hallinan Diamond & Jones, PLLC
                                                2727 West Cypress Creek Road
                                                Ft. Lauderdale, FL 33309
                                                Tel: 954-462-7000 Ext. 53332
                                                Fax: 954-462-7001
                                                Email:
                                                FLMD.bankruptcy@phelanhallinan.com

PH # 76360

# Exhibit "A"



MIN: █████████████

# NOTE

Loan Number █████

FHA Case No. ████████████████

JUNE 15, 2011      WALL      NEW JERSEY
[Date]      [City]      [State]

10403 LAKE HILL DRIVE, CLERMONT, FLORIDA 34711
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Advisors Mortgage Group, LLC, A LIMITED LIABILITY COMPANY and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED FIFTY-FIVE THOUSAND NINE HUNDRED FORTY-FOUR AND 00/100 Dollars (U.S. $ 155,944.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR AND 500/1000 percent ( 4.500 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on AUGUST 1, 2011 . Any principal and interest remaining on the 1st day of JULY, 2041 , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at 5114 HIGHWAY 33, WALL, NEW JERSEY 07727

, or at such other place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 790.15 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

FLORIDA - FHA FIXED RATE NOTE
PLFHA.NTE 05/01/08      Page 1 of 3      DocMagic *EForms*
www.docmagic.com

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                 percent (      4.000  %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

FLORIDA - FHA FIXED RATE NOTE
FLFHA.NTE 05/01/08                                Page 2 of 3                    DocMagic eForms
www.docmagic.com

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)          _____ (Seal)
STEVI    TORREZ                  -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                    -Borrower

PAY TO THE ORDER OF   PHH Mortgage Corporation .
WITHOUT RECOURSE
ADVISORS MORTGAGE GROUP, LLC
A LIMITED LIABILITY COMPANY
SOVEREIGN BANK, ATTORNEY IN FACT
BY: _____

BARBARA L. BALLINGER
ASSISTANT VICE PRESIDENT

WITHOUT RECOURSE
Pay to the order of:

*Michell Krause*

Michelle Krause
Assistant Vice-President, PHH Mortgage Corporation

*[Sign Original Only]*

FLORIDA - FHA FIXED RATE NOTE
FLFHA.NTE 05/01/08                    Page 3 of 3                    DocMagic eForms
                                                                    www.docmagic.com



**MORTGAGE SERVICES DC**
**1 MORTGAGE WAY**
**MOUNT LAUREL NJ 08054**

After Recording Return To:
**Mortgage Services**
**PO Box 5449**
**Mount Laurel, NJ 08054**
**Return to Phone: 877-766-8244**

This Document Prepared By:
**PHH Mortgage Corporation**
**PO Box 5449**
**Mount Laurel, NJ 08054**
**Keith Goldin, Specialist**

Parcel ID Number:

_____ [Space Above This Line For Recording Data] _____
Original Recording Date: **June 22, 2011**                                    Loan No
Original Loan Amount: **$155,944.00**                    FHA/VA Case Number:
Original Lender Name: **Advisors Mortgage Group,**
**LLC , a Limited Liability Company** .
New Money: **$0.00**
Prepared Date: July 11, 2014

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 11th day of July, 2014, between
**STEVI TORREZ, AND LORENZO TORREZ** whose address is **10403 LAKE HILL DR, CLERMONT, FL**
**34711** ("Borrower") and **PHH Mortgage Corporation** which is organized and existing under the laws of
**New Jersey**, and whose address is **1 Mortgage Way, Mt. Laurel, NJ 08054** ("Lender"), amends and
supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **June 15,**
**2011** and recorded in **Book/Liber 4044**, Page **2031**, Instrument No: **2011058217**, of the **Official**
**Records (Name of Records) of Lake County, FL (County and State, or other Jurisdiction)** and (2)
the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in the Security Instrument and defined therein as the "Property", located at
**10403 LAKE HILL DRIVE, CLERMONT, FL 34711**,
(Property Address)

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

Assignment from Mortgage Electronic Registration Systems, INC as Nominee for Advisors

HUD MODIFICATION AGREEMENT
**Loan No:**                                                                    *(page 1 of 5)*

**Mortgage Group, LLC , a Limited Liability Company to PHH Mortgage Corporation recorded 12/3/2012 bk 4246 pg 1014 instrument 2012126291**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **June 1, 2014**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$148,278.73**, consisting of the amount(s) loaned to Borrower by Lender plus capitalized interest in the amount of **$0.00** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.500%**, from **June 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$790.14**, beginning on the **1st** day of **July, 2014**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **July 1, 2041** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

HUD MODIFICATION AGREEMENT

**Loan No:** ▓▓▓▓▓▓▓▓▓▓

*(page 2 of 5)*

(b)     all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.  Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

HUD MODIFICATION AGREEMENT
**Loan No:**

*(page 3 of 5)*

_____ (Seal)
**STEVI TORREZ** -Borrower

_____ (Seal)
**LORENZO TORREZ** -Borrower

_____ -Witness        _____ -Witness
Signature                              Signature

_____ -Witness        Kathy Bennett -Witness
Print Name                             Print Name

_____ [Space Below This Line For Acknowledgments] _____

State of Florida

County of Orange                    ss.

The foregoing instrument was acknowledged before me, Notary Public this ____ day of
_____, 20__, by **STEVI TORREZ, AND LORENZO TORREZ** who is personally known
to me or who has produced _____ as identification.

_____
(Signature of person taking acknowledgment)

**JEZENIA BERNAL**
MY COMMISSION
EXPIRES March 17, 2015
(407) 398-0153   FloridaNotaryService.com

_____
(Name typed printed or stamped)

_____
(Title or Rank)

_____
(Serial Number if any)
My Commission expires : _____

Origination Company: **PHH Mortgage Corporation**
NMLSR ID: **2726**

HUD MODIFICATION AGREEMENT
**Loan No:**

*(page 4 of 5)*

PHH Mortgage Corporation

By: _____ _____(Seal) - Lender
Name:
Title:    JOSHUA DAWSON, ASST. V.P.

_____9_/_9_/_14_____
Date of Lender's Signature
_____ [Space Below This Line For Acknowledgments] _____ _____

State of New Jersey, County of Burlington

On _____9_/_9_____, 20 14, before me,  **KEITH H GOLDIN** _____,
(please print name)

a Notary Public in and for said State, personally appeared
**JOSHUA DAWSON**
_____ of the
Corporation, personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument and acknowledged to me that they executed
the same in their capacity, and that by their signature on the instrument, the individual, or the person upon
behalf of which the individual acted, executed the instrument.

_____        Keith H Goldin
Notary Public            **KEITH H GOLDIN**        Notary Public of New Jersey
                                    My Commission Expires: 04/09/2019
_____
Notary Public of New Jersey    4 / 9 / 19
My Commission expires: _____

HUD MODIFICATION AGREEMENT
**Lpan No:**

# EXHIBIT A

Loan: █████████

Lot 17, Crescent West, according to the plat thereof, as recorded in Plat Book 29 Pages 67, 68 & 69, inclusive, Public Records of Lake County, Florida

# Exhibit "B"



LEADING EDGE TITLE
960 S ORLANDO AVE
WINTER PARK, FL 32789

RETURN

INSTRUMENT #2011058217
OR BK 4044 PG 2031 - 2042 (12 PGS)
DATE 6/22/2011 9:05.32 AM
NEIL KELLY, CLERK OF THE CIRCUIT COURT
LAKE COUNTY
RECORDING FEES $103 50
MTG DOC $546.00 INTANGIBLE $311.89

This Instrument Prepared By:

After Recording Return To:
ADVISORS MORTGAGE GROUP, LLC
5114 HIGHWAY 33
WALL, NEW JERSEY 07727
Loan Number:

——————————————————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

| FHA CASE NO. |
| --- |
|  |

**MIN:**

   THIS MORTGAGE ("Security Instrument") is given on   JUNE 15,  2011
The mortgagor is   STEVI   TORREZ AND LORENZO TORREZ

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. **MERS is the nominee for Lender**, as hereinafter defined, and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.⬛⬛⬛MERS.
ADVISORS MORTGAGE GROUP, LLC, A LIMITED LIABILITY COMPANY   ("Lender")
is organized and existing under the laws of   NEW JERSEY
and has an address of   5114 HIGHWAY 33, WALL, NEW JERSEY 07727

Borrower owes Lender the principal sum of   ONE HUNDRED FIFTY-FIVE THOUSAND NINE
HUNDRED FORTY-FOUR AND 00/100            Dollars (U.S. $  155,944.00       ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   JULY 1,  2041
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in   LAKE                       County, Florida:
PARCEL #

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 05/03/10                              Page 1 of 9                    *DocMagic eForms*
                                                                              www.docmagic.com

which has the address of  10403 LAKE HILL DRIVE

[Street]

CLERMONT                                     , Florida        34711           ("Property Address"):

[City]                                                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2.   Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  05/03/10                           Page 2 of 9                    DocMagic *eForms*
                                                                             www.docmagic.com

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 05/03/10                            Page 3 of 9                          DocMagic *eForms*
www.docmagic.com

days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 05/03/10                                    Page 4 of 9                          DocMagic *eForms*
                                                                                            www.docmagic.com

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS
from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS            from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  05/03/10                                    Page 5 of 9                                    DocMagic *eForms*
www.docmagic.com

demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

DocMagic EForms
www.docmagic.com

If Lender gives notice of breach to Borrower:  (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act.  Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19. Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Attorneys' Fees.**  As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**21. Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

DocMagic *eForms*
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
STEVI   TORREZ              -Borrower
10403  LAKE HILL DRIVE,
CLERMONT,  FLORIDA 34711

_____ (Seal)
LORENZO  TORREZ            -Borrower
10403  LAKE HILL DRIVE,
CLERMONT,  FLORIDA 34711

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Witness:

TARA L. CORRIVEAU

Witness:

─ Michael Torrez

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  05/03/10                          Page 8 of 9                    DocMagic *eForms*
                                                                            www.docmagic.com

——————————— [Space Below This Line For Acknowledgment] ———————————

STATE OF FLORIDA

COUNTY OF __LAKE__

The foregoing instrument was acknowledged before me this _____ day of __JUN 1 5 2011__

by __STEVI   TORREZ AND LORENZO TORREZ__

who is personally known to me or who has produced _____ **Driver's License**
(Type of Identification)

as identification.

_____
Signature

**TARA L. CORRIVEAU**
NOTARY PUBLIC
STATE OF FLORIDA
Comm#
Expires 6/24/2011

(Seal)

**TARA L. CORRIVEAU**
_____
Name of Notary

_____
Title

_____
Serial Number, if any

*DocMagic* *eForms*
www.docmagic.com

# EXHIBIT "A"

Lot 17, Crescent West, according to the plat thereof, as recorded in Plat Book 29 Pages 67, 68 & 69, inclusive, Public Records of Lake County, Florida

FHA Case No.:
Loan Number:

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this          15th          day of
JUNE, 2011                     , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to Advisors Mortgage
Group, LLC, A LIMITED LIABILITY COMPANY
("Lender") of the same date and covering the Property described in the Security Instrument and located at:

        10403 LAKE HILL DRIVE, CLERMONT, FLORIDA 34711

[Property Address]

The Property is part of a planned unit development ("PUD") known as:

CRESCENT WEST

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and
facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all
improvements now existing or hereafter erected on the mortgaged premises, and such policy is
satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and
against the hazards Lender requires, including fire and other hazards included within the term
"extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender
waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to
Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property,
and (ii) Borrower's obligation under Paragraph 4 of the Security Instrument to maintain hazard
insurance coverage on the Property is deemed satisfied to the extent that the required coverage
is provided by the Owners' Association policy. Borrower shall give Lender prompt notice of any
lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event
of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to
the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are
hereby assigned and shall be paid to Lender for application to the sums secured by this Security
Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments
creating and governing the PUD.

---

FHA - MULTISTATE PUD RIDER
USFHAP.RDR 10/29/08                           Page 1 of 2                    DocMagic *eForms*
                                                                            www.docmagic.com

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)  
STEVI     TORREZ          -Borrower

_____ (Seal)  
LORENZO TORREZ            -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

_____ (Seal)  
                          -Borrower

RETURN

Return To: JAMES E. ALBERTELLI LAW
5404 CYPRESS CENTER DR., SUITE 300
TAMPA, FL 336091023

This Instrument Prepared By: Sherri Klish/KG
PHH Mortgage Corporation
1 Mortgage Way, Mt. Laurel, NJ 08054

MIN # [redacted]
MERS Phone: 1-888-679-6377

Task ID: STAAST

**ASSIGNMENT OF MORTGAGE/ DEED OF TRUST**

For Value Received, Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for ADVISORS MORTGAGE GROUP, LLC, A LIMITED LIABILITY COMPANY, its successors and assigns whose address is PO Box 2026, Flint, Michigan 48501-2026, hereby assigns and transfer to **PHH MORTGAGE CORPORATION**, its successors and assigns, whose address is 1 MORTGAGE WAY MT LAUREL, NJ 08054, all its right, title and interest in and to a certain Mortgage / Deed of Trust executed by STEVI TORREZ, AND LORENZO TORREZ and bearing the date of 06/15/2011, and recorded on 06/22/2011 in the office of the recorder of **LAKE** County, State of **FL**, in Book, Volume, or Liber No. 4044, at page 2031 or as No. 2011058217 in the amount of $155944.00
Property Address: 10403 LAKE HILL DRIVE CLERMONT FL 34711
Signed on 10.25. ,2012

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**

By: ______________________
Candace Gallardo - ASSISTANT SECRETARY

State of New Jersey, County of Burlington,
On 10/25, 2012, before me, KAREN L. GORDON, a notary public in and for said State, personally appeared Candace Gallardo ASSISTANT SECRETARY, of Mortgage Electronic Registration Systems, Inc personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

______________________
Notary Public

KAREN L. GORDON
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 3/22/2017

[redacted]